**MEXICAN PRODUCE CO., Plaintiff,**

**v.**

**SEA–LAND SERVICE, INC., Defendant.**

**Civ. No. 971–73.**

United States District Court,
D. Puerto Rico.

Oct. 22, 1974.

George López-Keelan, Hato Rey, P. R., for plaintiff.

José A. Fusté, San Juan, P. R., for defendant.

## MEMORANDUM ORDER

TOLEDO, Chief Judge.

This case came before the Court on defendant Sea-Land Service, Inc.'s Motion for Summary Judgment dated June 17, 1974, and the opposition thereto filed by the plaintiff dated August 22, 1974. The Motion for Summary Judgment requested that the present action be dismissed since Mexican Produce Co., plaintiff herein, was not the real party in interest to this litigation since the merchandise sold by said Mexican Produce Co. to Sonny Mohamed in Trinidad, which merchandise was allegedly damaged while being transported by Sea-Land Service, Inc., defendant herein, was sold C.I.F. Trinidad (cost, insurance and freight Trinidad) to said Sonny Mohamed, in which case title to the merchandise passed in San Juan upon delivery of the merchandise by Mexican Produce Co. to Sea-Land Service, Inc. as a carrier.

The Court, being duly advised, is of the opinion that since there existed between the buyer and seller a C.I.F. contract, title to the merchandise passed from the seller to the buyer at the port of San Juan and for that reason the damages suffered by the merchandise, after delivery of the same by the carrier, were for the account of the consignee, who is the real party in interest to this litigation.

That being the case Sea-Land Service, Inc.'s Motion for Summary Judgment is well taken and the Court will dispose of this matter based on the rights of the parties under a C.I.F. contract of sale.

On or around the month of August 1972, Sea-Land Service, Inc., as a maritime carrier, issued a bill of lading identified by number 981–640697, to cover the transportation of 1,400 cartons of garlic with a gross weight of approximately 33,600 pounds. Mexican Produce Co., plaintiff herein, appeared as shipper and Sonny Mohamed, with address at 43 George Street, Port of Spain Trinidad, appeared as the consignee through an order bill of lading to be cleared at Barclays Bank in Trinidad. The merchandise was moved by Sea-Land Service, Inc. on board the M/V Tropic Eve, on Voyage 127 West, and was to be discharged at Port of Spain, Trinidad, upon arrival. A copy of the bill of lading was attached to the Motion for Summary Judgment filed by the defendant in this case marked as Exhibit C. Apparently the merchandise suffered damages and the present suit was instituted to collect for said damages pursuant to the maritime contract of transportation.

■ On January 9, 1974, an interrogatory was filed by Sea-Land Service, Inc. directed to Mexican Produce Co. Question number 6 asked to whom was the shipment of garlic sold in Trinidad, and question number 7 requested the terms and conditions of the sale. Said questions were answered on February 20, 1974. Answer to question number 6 indicated that the buyer was Sonny Mohamed, and answer to question number 7 indicated that the terms and conditions of the sale were C.I.F. Trinidad. The interrogatory and answers were also accompanied and marked Exhibits A and B to defendant's Motion for Summary Judgment. That being the case, that is, a case involving a C.I.F. transaction, title to the merchandise passed from Mexican Produce Co. to Sonny Mohamed in Trinidad upon delivery of the merchandise by Mexican Produce Co. to Sea-Land Service, Inc. at the port of origin, that is, San Juan, Puerto Rico, and any damages that might have accrued to said merchandise were for the account of Sonny Mohamed and not Mexican Produce Co. As we have stated, under those circumstances Mexican Produce Co., plaintiff herein, is not entitled, as a matter of law, to institute the present action, since the same lies exclusively with the owner of the merchandise who at the time was Sonny Mohamed in Trinidad and not Mexican Produce Co. *Ramírez & Co., Inc. v. González Clemente & Co.*, 46 PRR 500 (1934); *Smith v. Maraño*, 1920, 267 Pa. 107, 110 A. 94, 10 A.L.R. 697, and cases cited therein.

There is no doubt from the interrogatory and answers thereto that the terms of the sale in this particular case were cost, insurance and freight Trinidad. Gilmore and Black state in *The Law of Admiralty*, at page 98, the following:

"*Under a C.I.F. term property passes at the port of shipment and the buyer (for whose benefit the insurance is carried) bears the risk of loss in transit.* Where buyer prefers to take out his own insurance (as he will when he carried a blanket or floating policy), the term used is 'C. & F.' (Cost and Freight). *The 'C. & F.' term has the same meaning so far as seller's performance and the passage of*

*property are concerned, as C.I.F. except that the seller does not see to the insurance coverage.*" (Emphasis added.)

■ In the Revised American Foreign Trade Definitions adopted July 30, 1941 by a joint committee representing the Chamber of Commerce of the United States of America, the National Council of American Imports, Inc. and the National Foreign Trade Council, Inc., it will be found that what C.F. and C.I.F. mean, among other things, is that title to the merchandise passes to the consignee upon the delivery made by the buyer to the carrier of the merchandise at the port of origin. See Knauth, *Ocean Bills of Lading 1953*, pp. 339 to 353. Pursuant to the aforementioned, under a C.I.F. contract naming the point of destination the seller quotes a price including the cost of the goods, the marine insurance and all the transportation charges to the named port of destination. Under this quotation the seller must:

(1) provide and pay for transportation to a named point of destination;

(2) pay export taxes, or other fees or charges, if any, levied because of exportation;

(3) provide and pay for marine insurance on behalf of the consignee;

(4) provide war risk insurance as obtainable in seller's market at the time of shipment at buyer's expense, unless the seller has agreed that the buyer will provide for war risk coverage;

(5) obtain and dispatch promptly to the buyer, or his agent, a clean bill of lading to the named point of destination, and also the insurance policy for a negotiable insurance certificate;

(6) where received-for-shipment ocean bill of lading may be tendered, be responsible for any loss or damage, or both, until the goods have been delivered into the custody of the ocean carrier;

(7) where on-board ocean bill of lading is required, be responsible for any loss or damage, or both, until the goods have been delivered on board the vessel;

(8) provide, at the buyer's request and expense, certificates of origin, consular invoices, or any other documents issued in the country of origin or of shipment, or of both, which the buyer may need or may require for importation of goods into the named point of destination and, where necessary, for their passage in transit through another country.

Under the C.I.F. quotation, the buyer must:

(1) accept the documents when presented;

(2) receive the goods upon arrival, handle and pay for all subsequent movements of the goods, including taking delivery from the vessel in accordance with the bill of lading clauses and terms and pay all costs of the landing including any duties, taxes and other expenses at the named point of destination;

(3) pay for war risk insurance provided by seller;

(4) be responsible for loss of or damage to goods, or both, from the time and place at which seller's obligations under number 6 and number 7 above have ceased;

(5) pay the cost of certificates of origin, consular invoices or any other documents issued in the country of origin or of shipment, or of both, which may be required for importation of the goods into the country of destination and, where necessary, for their passage in transit through another country.

The fact that the consignee, in this case the buyer, is responsible for loss or damage to goods, or both, from the time and place at which the seller delivered the goods to the ocean carrier at the port of origin, has been decided by this Court. *Agencias Intermares, Inc. v. Sea-Land Service, Inc.,* Order of May 24, 1974, Civil No. 223–71. The fact that under the circumstances of this case the plaintiff is not entitled to recovery has also been decided in *The Geisha,* 1950 A.M.C. 203 (S.D.N.Y.); *Badwar v.*

*Colorado F. & I. Co.,* 1955 A.M.C. 2139 (S.D.N.Y.).

It appearing from the pleadings and answers to interrogatories and from all the documents on file that there is no genuine issue as to the fact that the real party in interest to this litigation is not the plaintiff as a matter of law, Summary Judgment shall be entered on behalf of defendant dismissing the Complaint filed herein.

The Clerk of this Court is directed to enter judgment forthwith.

The determination herein made disposes of the so-called Motion for Summary Judgment which appears contained in plaintiff's Memorandum in support of its opposition to the Motion for Summary Judgment since the same has become moot.

IT IS SO ORDERED.